**Roland BALL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 06A01–1007–CR–426.

Court of Appeals of Indiana.

April 20, 2011.

Transfer Denied July 19, 2011.

Heather M. Shumaker, Jeffrey S. Jacob, Andreoli & Jacob, Zionsville, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

---

1. The Table of Contents in Ball's appendix shows the Chronological Case Summary beginning on page 1, the Clerk's Record beginning on page 7, and the Transcript beginning on page 72. We direct counsel to Indiana

## OPINION

ROBB, Chief Judge.

*Case Summary and Issues*

Following a jury trial, Roland Ball was convicted of sexual battery, a Class D felony. Ball appeals his conviction, raising three issues for our review, of which we find the following dispositive: whether the evidence is sufficient to support his conviction. Concluding there is insufficient evidence of sexual battery but sufficient evidence of the lesser-included offense of battery, we reverse and remand.

*Facts and Procedural History* [1]

The facts most favorable to the verdict show that Roland Ball and Shaun Dozier were both residents at a housing complex for senior citizens and people needing specially-designed apartments. Dozier is in a wheelchair and takes "extremely strong medication for pain" that affects her memory. Transcript at 108. One evening in October 2009, Dozier's neighbor Jacob and Ball were watching movies with Dozier in her apartment. Jacob and Ball were drinking beer, but Dozier had nothing to drink. At some point in the evening, Jacob and Ball left to go to the liquor store to get more beer for themselves and to get a bottle of wine for Dozier at her request. Dozier fell asleep while they were gone. She testified that she awoke to Ball kissing and licking her face. After she asked him to stop twice, he did and left her apartment.

The State charged Ball with sexual battery. The information is captioned "Sexual Battery[;] I.C. 35–42–4–8(a)(2)[;] a Class D Felony." Appellant's Appendix at 55. The body of the information alleges:

Appellate Rule 50(C), which provides that the table of contents in an appendix "shall specifically identify each item contained in the Appendix...."

Ball did with the intent to arouse [or] satisfy his own sexual desires or the sexual desires of another person when that person is so mentally disabled or deficient that consent to the said touching cannot be given, to-wit: Ronald Ball did kiss Shaun Dozier while she was unable to consent to such kissing while she was sleeping, contrary to the form of the statutes in such cases made and provided by I.C. 35–42–4–8(a)(1) and against the peace and dignity of the State of Indiana.

*Id.* In the trial court's preliminary instructions to the jury, it read the allegations of the information as stated above. *See* Tr. at 99. It then instructed the jury on the statutory definition of sexual battery as follows:

The crime of Sexual Battery is defined by statute as follows 35–42–4–8 Sexual Battery. A person who, with the intent to arouse or satisfy the person's own sexual desires or the sexual desires of another person touches another person when that person is, one compelled to submit to the touching by force or the imminent threat of force or two, so mentally disabled or deficient that consent to the touching cannot be given commits Sexual Battery, a Class D felony.

*Id.* at 100.

Dozier and the investigating officer testified for the State and were cross-examined by Ball's counsel. Ball moved for a directed verdict at the conclusion of the State's case, noting the State was required to establish

a couple of things [including] there has to be either compelling the person to submit to the touching by force or the imminent threat of force, *which is not the prong that is alleged in this case*, or there has to be proof that the . . . alleged victim is so mentally disabled or

deficient that consent to the touching cannot be given.

*Id.* at 139 (emphasis added). Ball argued there was no evidence to establish Dozier was mentally disabled or deficient and the State responded that because Dozier was asleep she was "not mentally able to consent to any touching. . . ." *Id.* at 141. The motion for directed verdict was denied, and the defense rested without presenting any additional evidence. During closing argument, both the State and Ball's counsel referenced only the mentally disabled or deficient prong of the sexual battery statute.

The trial court gave the jury final instructions which again included the allegations contained in the information. The final instruction on the statutory definition of the crime read as follows:

[A] person who with intent to arouse or satisfy the person's own sexual desires or the sexual desires of another person touches another person so mentally disabled or deficient that consent to said touching cannot be given, commits sexual battery, a Class D Felony.

*Id.* at 156. In addition, the jury was instructed on the elements of the crime as follows:

To convict the Defendant, the State must have proved each of the following elements. One, the Defendant . . . knowingly or intentionally. Two, with intent to arouse or satisfy his own sexual desires or the sexual desires of Ms. Dozier. Three, touched Ms. Dozier. Four, when Ms. Dozier was so mentally disabled or deficient that said, that consent to the touching could not be given.

*Id.* at 156–57.

The jury found Ball guilty of sexual battery and he was sentenced to one and one-half years at the Indiana Department of Correction with six months to be executed and the remainder suspended to super-

vised probation. Ball now appeals his conviction.

### Discussion and Decision [2]

#### I. Standard of Review

■■■ Our standard of reviewing a sufficiency claim is well-settled:

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146–47 (Ind.2007) (quotations, citations, and footnote omitted) (emphasis in original). The interpretation of a statute, however, is a question of law that we review de novo. *Montgomery v. State*, 878 N.E.2d 262, 266 (Ind.Ct.App.2007).

#### II. Elements of the Charge

Sexual battery as a Class D felony is defined by statute as:

> (a) A person who, with intent to arouse or satisfy the person's own sexual desires or the sexual desires of another person, touches another person when that person is:
>
> (1) compelled to submit to the touching by force or the imminent threat of force; or
>
> (2) so mentally disabled or deficient that consent to the touching cannot be given;
>
> commits sexual battery, a Class D felony.

Ind.Code § 35–42–4–8(a). We begin by noting that Ball contends he was "officially" charged with and convicted of sexual battery by force or threat of force because in addition to the statutory cite to Indiana Code section 35–42–4–8(a)(1) in the body of the information and the preliminary instruction to the jury that included the entire text of the sexual battery statute, both quoted above, the statutory cite in the probable cause affidavit, the chronological case summary, and the abstract of judgment is to Indiana Code section 35–42–4–8(a)(1). Although we acknowledge the discrepancies and caution the State and the trial court to be more assiduous in the future, it is clear from the body of the information, as well as from the evidence adduced at trial, the parties' arguments, and the final instructions the trial court gave to the jury, that Ball was charged with sexual battery upon a mentally disabled or deficient victim and that all parties understood that was the charge. *See* Ind.Code § 35–34–1–2(a)(3) (stating any error in the citation of the statutory provision alleged to have been violated in an information "does not constitute grounds for reversal of a conviction where the defendant was not otherwise misled as to the nature of the charges against" him); *see also Jones v. State*, 938 N.E.2d 1248, 1252 (Ind.Ct.App.2010) ("A charging informa-

---

**2.** We heard oral argument on March 24, 2011, at Indiana State University in Terre Haute, Indiana. We thank the students, faculty, and staff of the university for the gracious reception, and counsel for their capable presentations.

tion must be sufficiently specific to apprise the defendant of the crime for which he is charged and to enable him to prepare a defense.") (quotation and citation omitted). Accordingly, we consider only the sufficiency of the evidence supporting a conviction of sexual battery pursuant to the mental disability or deficiency prong of the statute.

## III. Sufficiency of the Evidence

▓▓▓▓ Ball contends the State failed to prove that Dozier, by virtue of being asleep, was so mentally disabled or deficient that she could not give her consent to the touching.[3] Ball argues being asleep is not equivalent to being mentally disabled or deficient. The nature of Ball's claim requires us to interpret the meaning of "mentally disabled or deficient" as it is written in the sexual battery statute, which does not define the phrase. In addition, no reported case has considered the question of whether sleep constitutes mental disability or deficiency for purposes of the sexual battery statute. The general rule of statutory construction is that penal statutes are to be construed strictly against the State and ambiguities are resolved in favor of the accused. *Merritt v. State*, 829 N.E.2d 472, 475 (Ind.2005). However, statutes should not be construed so narrowly as to exclude cases they should fairly cover. *Id.* We assume language was used intentionally and that every word should be given meaning. *Id.* Statutes covering the same subject matter are to be read together to harmonize and give effect to each. *Id.* "We seek to give a statute practical application by construing it in a way favoring public convenience and avoiding absurdity, hardship, and injustice." *Id.*

Ball first points us to *Chatham v. State*, 845 N.E.2d 203 (Ind.Ct.App.2006). In that case, the defendant was charged with sexual battery by force or threat of force for walking up behind the victim and grabbing her with his hand between her thighs. The victim turned around to face the defendant and then walked away; the defendant ran away. On appeal, the defendant argued the evidence was insufficient to show that the victim was compelled to submit to the touching by force or threat of force. The State argued the victim never had the opportunity to grant or deny consent to the touching as she was approached from behind and was taken off guard. Noting that evidence the victim did not voluntarily consent to the touching is not enough, by itself, to support the conclusion the victim was compelled to submit to the touching by force or threat of force, we reversed the sexual battery conviction. *Id.* at 207–08; *see also Scott–Gordon v. State*, 579 N.E.2d 602, 604 (Ind. 1991) (reversing conviction of sexual battery where defendant approached the victim from behind and grabbed his buttocks, holding that although victim's reaction in turning and punching defendant showed he did not voluntarily consent to the touching, there was no evidence the victim was compelled to submit to the touching by force or threat of force). Ball equates the facts of this case, where his kissing Dozier caught her unaware because she was asleep, to the facts of *Chatham*, where the victim was caught unaware because she was approached from behind. Although the facts are similar, Ball and the defendant in *Chatham* were charged under different provisions of the statute, and the result in *Chatham* is therefore not dispositive.

---

**3.** Ball's counsel conceded at oral argument that there is sufficient evidence from which Ball's intent to arouse his or Dozier's sexual desires could be inferred, so we do not address that element of the crime.

Ball also points us to the rape and criminal deviate conduct statutes, both of which include, in identical language, the force or threat of force and mental disability or deficiency prongs, found in the sexual battery statute. *See* Ind.Code §§ 35–42–4–1 (rape) & 35–42–4–2 (criminal deviate conduct); *see also Scott–Gordon,* 579 N.E.2d at 604 (noting no reported cases discussing force or threat of force prong of sexual battery statute and therefore looking to cases interpreting identical language in rape statute for guidance). In a criminal deviate conduct case alleging mental disability or deficiency, this court held that "[t]he plain and ordinary meaning of the words 'mentally disabled or deficient' is subnormal intelligence or mental disease or defect." *Douglas v. State,* 484 N.E.2d 610, 613 (Ind.Ct.App.1985). Noting the phrase "mental disability or deficiency" is qualified by the resultant inability to give consent, the meaning has been expanded for purposes of those statutes to include not only a victim with lower-than-normal intelligence, *see, e.g., Bozarth v. State,* 520 N.E.2d 460, 463 (Ind.Ct.App.1988) (twenty-one year old victim was deaf, legally blind, and had a mental age of approximately ten years old and an I.Q. between fifty and seventy), *trans. denied,* but also a victim who was highly intoxicated, *Gale v. State,* 882 N.E.2d 808, 818 (Ind.Ct.App.2008), and a victim who had unknowingly ingested eight Xanax, *Hancock v. State,* 758 N.E.2d 995, 1004 (Ind.Ct.App.2001), *aff'd in relevant part,* 768 N.E.2d 880 (Ind.2002). As noted in *Warrick v. State,* 538 N.E.2d 952, 955 (Ind.Ct.App.1989), however, the "mental disability or deficiency" prong of the criminal deviate conduct statute "primarily exists to prevent abuse of persons in our society who, by reason of mental disability, are unable to protect themselves from sex-

ual abuse." [4] The *lack* of consent is not an element of the offense; it is the *inability* to give consent that is required to show mental disability or deficiency.

The rape and criminal deviate conduct statutes, however, include an additional, alternative prong not present in the sexual battery statute: a defendant may be convicted under either of those statutes if the victim is unaware the conduct is occurring. *See* Ind.Code §§ 35–42–4–1(a)(2); 35–42–4–2(a)(2). "Unaware" has been defined as "not aware: lacking knowledge or acquaintance: unconscious." *Becker v. State,* 703 N.E.2d 696, 698 (Ind.Ct.App.1998) (quoting Webster's Third New World Dictionary 2483 (1986 ed.)). Circumstances in which we have found a victim to be unaware include where the victim was asleep, as "a person is unconscious during sleep," *id.* (reviewing sufficiency of criminal deviate conduct conviction), and where the victim had lost consciousness due to intoxication, *Glover v. State,* 760 N.E.2d 1120, 1124 (Ind.Ct.App.2002) (reviewing sufficiency of rape conviction), *trans. denied.* Notably, although a victim who was unconscious due to intoxication has supported a conviction charged under either the mentally disabled or deficient or unawareness prongs, *see Gale,* 882 N.E.2d at 818 (mentally disabled or deficient), *Glover,* 760 N.E.2d at 1124 (unaware), sleep has only supported a conviction charged under the unawareness prong, not the mentally disabled or deficient prong, *Becker,* 703 N.E.2d at 698.

The State posited at oral argument that the unawareness prong might have been left out of the sexual battery statute so as not to catch "innocent conduct" within its definition. And yet, the State conceded, in addressing a hypothetical situation similar

---

4. We note that although there was testimony that Dozier was taking strong medication on the night of the incident, there is no indica-

tion that it made her incapacitated, and the State did not argue this as a basis for finding Dozier was mentally disabled or deficient.

to the facts of *Chatham,* that a person on a crowded bus who gropes a stranger from behind would be guilty of neither sexual battery by force or threat of force nor sexual battery on a mentally disabled or deficient victim, despite the victim being unable to consent to the touching prior to it occurring due to not knowing it was going to happen. Rather, the State agreed, despite the sexual, deliberate, and unwelcome nature of the touching, this conduct would be battery, presumptively a Class B misdemeanor. If the sexual battery statute would not apply to this conduct, we do not believe it should apply to Ball's conduct, either, simply because Dozier was asleep when he initiated the contact.

■ As our supreme court noted in *Scott–Gordon,* not all touchings intended to arouse or satisfy sexual desires constitute sexual battery. 579 N.E.2d at 604. The plain meaning of "mentally disabled or deficient," as well as the facts of the cases in which a victim has been found to be mentally disabled or deficient, would exclude a temporary, natural state such as sleep from inclusion in that phrase. Moreover, the legislature did not include in the sexual battery statute the "unawareness" provision included in other sex offense statutes, and we believe it would be disharmonious to construe "mentally disabled or deficient" to include sleep for purposes of the sexual battery statute when the same phrase does not include sleep for purposes of the other sexual offense statutes. We therefore conclude that being asleep does not constitute being mentally disabled or deficient.

Dozier did not give her consent to Ball's advances but she was not *unable* to give her consent—in fact, as soon as she became aware of them, she expressly refused them. Although Ball does not dispute that he kissed Dozier while she slept, this is not conduct which is fairly covered by the definition of sexual battery. We therefore hold that the State failed to prove the element of mental disability or deficiency beyond a reasonable doubt and reverse Ball's conviction for sexual battery, a Class D felony.

■ When a conviction is reversed because of insufficient evidence, however, we may remand for the trial court to enter a judgment of conviction upon a lesser-included offense if the evidence is sufficient to support the lesser offense. *Neville v. State,* 802 N.E.2d 516, 519 (Ind.Ct. App.2004), *trans. denied.* The jury in this case was instructed on the elements of battery as a Class B misdemeanor. Battery as a Class B misdemeanor is defined as knowingly or intentionally touching another person in a rude, insolent, or angry manner. Ind.Code § 35–42–2–1(a). Evidence of touching, however slight, is sufficient to support a conviction for battery. *Mishler v. State,* 660 N.E.2d 343, 348 (Ind. Ct.App.1996). The evidence at trial was that Ball kissed Dozier and she did not desire his kisses. We conclude this evidence is sufficient to prove Ball committed battery as a Class B misdemeanor. *See Chatham,* 845 N.E.2d at 208 (reversing sexual battery conviction for insufficient evidence but remanding for entry of judgment of conviction of battery).

### Conclusion

Sleep is not equivalent to a mental disability or deficiency for purposes of the sexual battery statute, and therefore, the State's evidence that Ball's victim was sleeping when he began kissing her is insufficient to support his conviction for sexual battery. However, the evidence proves Ball committed battery upon his victim. We therefore reverse Ball's sexual battery conviction and remand to the trial

court to enter judgment for battery as a Class B misdemeanor.

Reversed and remanded.

DARDEN, J., and MAY, J., concur.